UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>Devon Byron Thompson, and Stephanie Noel Thompson,<br><br>            Debtors. | **Bankruptcy Case<br>No. 18-40956-JMM** |
| R. Sam Hopkins,<br><br>            Plaintiff,<br><br>vs.<br><br>Tyson James Coles,<br><br>           Defendant. | **Adv. Proceeding<br>No. 19-08046-JMM** |

**MEMORANDUM OF DECISION**

**Appearances:**

    Thomas D. Smith, Pocatello, Idaho, Attorney for Plaintiff.

    Ryan E. Farnsworth, Idaho Falls, Idaho, Attorney for Defendant.

*Introduction*

    The Chapter 7 Trustee, R. Sam Hopkins, filed this adversary proceeding on

November 6, 2019, to recover property held by the Defendant, Tyson J. Coles. Dkt. No.

MEMORANDUM OF DECISION − 1

1. The Trustee filed an amended complaint on April 23, 2020, Dkt. No. 15, and the Defendant filed an answer on June 22, 2020. Dkt. No. 21. Both parties filed pre-trial memorandums in support of their respective positions. Dkt. Nos. 23 and 25.

On July 13, 2020, the Court conducted a trial in which the parties stipulated to admitting exhibits 100–108 and provided oral arguments in support of their respective positions. Dkt. No. 26. The matter was thereafter deemed under advisement. The Court has considered the evidence and arguments put forth, and this Memorandum Decision sets forth the Court's findings, conclusions, and reasons for its disposition of the adversary proceeding. Rules 7052; 9014.[1]

## *Findings of Fact*

The facts are relatively simple and are not in dispute.[2] Devon Byron Thompson ("Debtor") is a joint Debtor in the underlying bankruptcy proceeding. *In re Thompson*, Case No. 18-40956-JMM. The parties stipulated to the following facts:

1.   The authorized representative of Sun Belt Rental, Inc. in Roosevelt, Utah assigned the Utah certificate of title for the 2009 Load Max flatbed trailer (VIN 5L8GP302291016163) ("Trailer") to Debtor . . . and then [Debtor] assigned the certificate of title to the Defendant and indicated that he retained a lien on the Trailer, although he wrote in explanation to the Department of Motor Vehicles that he did not intend to retain a lien, and filled the title out incorrectly.

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–88.

[2] These findings of fact are based upon a stipulation of facts filed by the parties, Ex. 108, as well as the Court's review of its own docket.

MEMORANDUM OF DECISION − 2

2. On August 28, 2018, [Debtor] and the Defendant filed an application with the Idaho Transportation Department ("ITD") to have the Trailer titled to [Debtor] or the Defendant as alternate owners at the instruction of the ITD, because of the mistakes made on the Utah title.
3. [Debtor] filed an Indemnification Affidavit with ITD that indicates he incorrectly signed the Utah certificate of title, and that he intended for the Trailer to be titled in his and the Defendant's names.
4. On September 5, 2018, ITD issued a certificate of title for the Trailer that lists the Defendant or [Debtor] as alternate owners.
5. No lien holders are listed on the certificate of title for the Trailer.
6. On October 17, 2018, the Debtors filed a petition to initiate a chapter 7 bankruptcy proceeding, Case No. 18-40956-JMM.
7. [Debtor] was listed as an alternate owner on the certificate of title for the Trailer when the Debtors filed their bankruptcy petition.
8. The Plaintiff sent letters to the Defendant on March 11, 2019, and April 23, 2019, that advised him of the pending bankruptcy proceeding and requested that he surrender the Trailer to the Plaintiff.
9. On October 1, 2019, the Plaintiff's counsel sent a letter to the Defendant that advised him of the pending bankruptcy proceeding and requested that he surrender the Trailer to the Plaintiff.
10. On October 11, 2019, the Defendant called the Plaintiff's counsel in response to the letter dated October 1, 2019.
11. On October 11, 2019, before the telephone call between Plaintiff's counsel and the Defendant, the Defendant filed an application with ITD to have the Trailer titled solely in his name, because he was instructed to do so a year after the 2018 purchase by ITD.
12. ITD subsequently issued a new certificate of title for the Trailer that listed the Defendant as the sole owner.
13. The Defendant did not obtain relief from the automatic stay before filing the application with ITD, and he still has possession of the Trailer. Defendant does not believe he had any knowledge, whether actual or constructive, of Debtor's bankruptcy at the time he filed the 2019 application with ITD.
14. The Trustee employed Thomas D. Smith to prosecute this adversary proceeding and to provide legal services for the Debtors' underlying bankruptcy proceeding as set forth in Exhibit 105.

Ex. 108.

MEMORANDUM OF DECISION − 3

*Arguments*

The Trustee seeks an order requiring the Defendant to surrender the Trailer or its value pursuant to § 542(a). Dkt. No. 15. Trustee also seeks damages resulting from the Defendant's violation of the automatic stay pursuant to § 362(k). In response, Defendant contends that he has an equitable interest in the Trailer and, therefore, it is not property of the estate under § 541(d) and not subject to turnover. Dkt. No. 25. Defendant disputes that he performed any title transfer paperwork after a demand or phone call from the Trustee or his representative, but only did so because of ITD's recommendation that he retitle the Trailer after one year of ownership. *Id.* Thus, Defendant argues that the Trustee is not entitled to damages for violation of the automatic stay because the Defendant was not a notice recipient on the bankruptcy, and was not a creditor to Debtor prior to the bankruptcy being filed, and, therefore, had no actual or constructive notice of the case filing. *Id.*

*Analysis and Disposition*

A.   Recovery Under § 542(a)

"Section 541(a)(1) of the Code defines property of the estate as 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re Woods*, 386 B.R. 758, 761 (Bankr. D. Idaho 2008) (quoting *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 199, 103 S. Ct. 2309, 2310, 76 L. Ed. 2d 515 (1983)). "[W]hile §541(a)(1) is intentionally broad in scope, it does not expand a debtor's rights in property over what existed as of the date of filing." *Id.* (quoting *Farmers. Ins. Group v.*

MEMORANDUM OF DECISION − 4

*Krommenhoek (In re Hiatt)*, 00.3 I.B.C.R. 131, 132 (Bankr. D. Idaho 2000)). "While defining property of the estate is a matter of federal law, the nature and extent of a debtor's interest in property is determined by state law." *Id.* (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979); *Foothill Capital Corp. v. Clare's Food Mkt., Inc. (In re Coupon Clearing Serv., Inc.)*, 113 F.3d 1091, 1099 (9th Cir. 1997)).

Title 49 of the Idaho Code governs motor vehicles. Trailers weighing over 2,000 pounds are subject to the same titling requirements as motor vehicles. Idaho Code § 49-501.[3] "[N]o person acquiring a vehicle from the owner, whether the owner is a dealer or otherwise, shall acquire any right, title, claim or interest in or to the vehicle until he has issued to him a certificate of title to that vehicle." *In re Woods*, 386 B.R. at 761. This Court reviewed Idaho's motor vehicle titling statutes in *Gugino v. Jones (In re Antonie)*:

> "[I]f a debtor is listed as a vehicle's owner on its Idaho certificate of title when she files for bankruptcy, her interest in the vehicle becomes property of her bankruptcy estate. That result is the same where a debtor is listed as a vehicle's alternate owner on its Idaho certificate of title when she files for bankruptcy. As alternate owners, each party on an 'OR' motor vehicle title has the ability to unilaterally transfer complete ownership of the vehicle to another. When one alternate owner of a vehicle files a bankruptcy petition, the vehicle, and all associated interests of the debtor in the vehicle, enter her bankruptcy estate. The alternate owner listed on the vehicle title, at least during the debtor's bankruptcy, has no exercisable interests in the vehicle.

---

[3] The ITD records indicate the Trailer weighs more than 2,000 pounds. Ex. 100, p. 5.

MEMORANDUM OF DECISION - 5

*Gugino v. Jones (In re Antonie)*, No. 11-6023-JDP, 2011 WL 5913725, at *2 (Bankr. D. Idaho Nov. 28, 2011) (internal citations omitted).[4] Once the property enters the debtor's bankruptcy estate, any attempt by the alternate owner to transfer the vehicle has no legal effect and is void. *See id.* at *3; *see also In re Urwin*, No. 09-01921-JDP, 2010 WL 457737, at *2 (Bankr. D. Idaho Feb. 2, 2010) ("Actions taken in violation of the automatic stay are void.") (citing *Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d 932, 934 (9th Cir. 2009); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992)). This Court addressed this type of situation in *Gugino v. Jones (In re Antonie)*:

> The parties listed on an Idaho "OR" motor vehicle title, however, are not co-owners of the vehicle; they are 'alternate' owners. *See Latham Motors, Inc.* 851 P.2d at 991–92. Per the dictionary, an 'alternate' is 'one that substitutes for or alternates with another.' MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 37 (11th ed. 2004). In other words, alternates in a specific capacity do not act in that capacity at the same time; while one alternate fulfills the given role, the other does not. Likewise, when one Idaho alternate vehicle owner exercises control over the limited interests and rights associated with her vehicle, the other alternate owner may not. *See In re Saunders*, 08.1 I.B.C.R. at 18 (indicating that, when one alternate vehicle owner files for bankruptcy, and her vehicle interests become property of her bankruptcy estate, the vehicle's other alternate owner must relinquish possession of the vehicle and loses her right to sell the vehicle)."

*Id.* at n. 6.

---

[4] "This result is different from that in the situation where a debtor and another 'co-own' property. There, the Code provides certain protections for the co-owner's interest in the property. *See, e.g.*, §§ 363(h)-(j) (providing that a trustee may only sell property in which the bankruptcy estate and a co-owner both have an interest if certain conditions are met, and that, if such property is sold, a co-owner has a right of first refusal and is entitled to his share of proceeds from the sale.)" *Gugino v. Jones (In re Antonie)*, No. 11-6023-JDP, 2011 WL 5913725, at n. 6.

MEMORANDUM OF DECISION − 6

This case is similar to *Antonie*. In that case, the debtor and her mother were listed as alternate owners on the certificate of title for a manufactured home (the "Home"). *Id.* at *1.[5] The debtor filed for bankruptcy and, during the pendency of the debtor's bankruptcy case, her mother signed the title certificate over to Keith R. Jones ("Jones"). *Id.* Jones applied for and obtained a new title certificate bearing his name as the only owner. *Id.* The chapter 7 trustee in that case filed an adversary proceeding against Jones for turnover of possession of the Home pursuant to § 542(a). *Id.* This Court held that there was no post-petition transfer by the debtor's mother because the mother had no exercisable interests in the vehicle during the pendency of the bankruptcy case. *Id.* at *3. At the time of the filing of the case, the debtor was an alternate owner on the Home's certificate of title. *Id.* As such, on the date of filing, the debtor's interest in the Home became part of her bankruptcy estate. *Id.* "Once property enters a debtor's bankruptcy estate, the only party permitted to administer that property is the case trustee." *Id.* (citing *Zavala v. Wells Fargo Bank, N.A. (In re Zavala)*, 444 B.R. 181,189 (Bankr. E.D. Cal. 2011) and § 323(a)). Thus, because the trustee was the only person who could administer the bankruptcy estate, the debtor's mother, who was an alternate owner of the Home, "had no ability to assign the title of the Home to Jones." *Id.*

---

[5] Idaho's motor vehicle titling statutes apply to manufactured homes. *Gugino v. Jones (In re Antonie)*, No. 11-6023-JDP, 2011 WL 5913725, at *1 (citing Idaho Code § 49–501(2)(b)).

MEMORANDUM OF DECISION − 7

Here, the Debtor and the Defendant were listed as alternate owners of the Trailer. Ex. 108, ¶ 2–4. The Debtor then filed for bankruptcy while the Defendant was still listed as an alternate owner on the title, which brought the Trailer into the bankruptcy estate. *Id.* at ¶ 6–7. During the pendency of the bankruptcy action, the Defendant sought to transfer the certificate of title solely into his own name. *Id.* at ¶ 11.[6] Following the submission of the Defendant's application, the ITD issued a new certificate solely in the Defendant's name. *Id.* at ¶ 12. However, as of the date of the Debtor's petition, the Trustee became the only person authorized to administer property included in the bankruptcy estate. The Defendant, as an alternate owner of the Trailer, had no authority to have it retitled in his name only while the Trailer remained a part of the Debtor's bankruptcy estate, and his attempted transfer to himself in October 2019, had no legal effect and is void. *In re Urwin*, No. 09-01921-JDP, 2010 WL 457737, at *2 ("Actions taken in violation of the automatic stay are void."); *see also Gugino v. Jones (In re Antonie)*, No. 11-6023-JDP, 2011 WL 5913725 at *3 (citing *Lowe v. Sanflippo (In re Schmidt)*, 362 B.R. 318, 321 (Bankr. W.D. Tex. 2007); *Simpson v. Penner*, 36 F.3d 450, 452–53 (5th Cir. 1994) ("[O]ne cannot transfer what one does not have.")).[7]

---

[6] The primary difference between this case and *Antonie* appears to be the fact that the Defendant here attempted to transfer title solely to himself, whereas the debtor's mother in *Antonie* attempted to transfer title to a third party. The legal analysis remains the same.

[7] While the State did issue a new certificate of title to Defendant bearing only his name, the Trailer was property of the Debtor's bankruptcy estate, governed by the Code, at the time. "Federal bankruptcy law prevails where state law conflicts with the system provided by the Code." *Gugino v. Jones (In re Antonie)*, No. 11-6023-JDP, 2011 WL 5913725, at n. 9 (citing *Butner v. United States*, 440 U.S. at 54, 99 S. Ct. at 918, 59 L. Ed. 2d at 136). Thus, the State's actions in issuing a new certificate of title do not

MEMORANDUM OF DECISION − 8

Having determined that the Trailer was included in Defendant's bankruptcy estate, the post-petition retitling was void, and the Trailer remains in Defendant's possession, the Court concludes the Trailer is subject to turnover. Pursuant to § 542(a), an entity "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." There has been no argument that the Trailer is of inconsequential value. Accordingly, Trustee's claim for turnover in the Amended Complaint will be granted, and the Defendant must surrender the Trailer or its value to the Trustee.

B.    <u>Violation of the Automatic Stay and Damages under § 362(k)</u>

Trustee seeks damages incurred stemming from the Defendant's allegedly willful violation of the automatic stay pursuant to § 362(k). Dkt. No. 15. "[T]he automatic stay plays a vital role in bankruptcy." *Schwartz v. United States (In re Schwartz)*, 954 F.2d at 571. When a debtor files a bankruptcy petition, § 362(a) imposes an automatic stay on "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3). "The stay 'gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while

---

trump the fact that the Defendant was prohibited by federal bankruptcy law from transferring title to himself. *See id.*

MEMORANDUM OF DECISION − 9

preserving the debtor's assets for repayment and reorganization of his or her obligations.'" *Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d at 934 (quoting *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985)).

"[A]ny act to obtain possession of property of the estate or of property from the estate or to exercise control of the property of the estate" is a violation of the automatic stay. § 362(a)(3). "Actions taken in violation of the automatic stay are void." *In re Urwin*, 2010 WL 457737, at *2 (citing *Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d at 934; *Schwartz v. United States (In re Schwartz)*, 954 F.2d at 571).

It is clear that Defendant violated the automatic stay when he retitled property of the Debtor's bankruptcy estate without the Trustee's permission. However, in addition to voiding the Defendant's actions, violation of the automatic stay may carry additional consequences. "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(k)(1). Accordingly, the Court will consider whether Defendant's actions were a willful violation of the stay.

The Plaintiff has the burden of showing that a violation was willful by a preponderance of the evidence. *See In re Sherman*, 2003 WL 25273848, at *2 (Bankr. D. Idaho Oct. 22, 2003). "A violation of the automatic stay is willful if the creditor acted with knowledge of the automatic stay, and those actions were intentional." *In re Urwin*, 2010 WL 457737, at *3 (citing *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002); *Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 220 (9th Cir. BAP

MEMORANDUM OF DECISION − 10

2006); *In re Wiersma*, 03.1 I.B.C.R. 42, 44 (Bankr. D. Idaho 2003)). "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay." *Id.* (citing *In re Ozenne*, 337 B.R. at 220).

The issue, then, is whether the Defendant had knowledge of the bankruptcy proceeding before he completed the paperwork to have the Trailer titled in his name. Bankruptcy courts have found that regular mail can impart notice of a bankruptcy petition. *See In re Estavan Capital LLC*, No. 2:14-BK-17882-RK, 2015 WL 902056, at *4 (Bankr. C.D. Cal. Feb. 25, 2015), aff'd, No. BAP CC-15-1084-KIKUF, 2015 WL 7758494 (9th Cir. BAP 2015) (finding that a creditor had actual notice of the debtor's bankruptcy filing where the creditor was mailed, via regular mail, notice of the bankruptcy filing, even though the creditor's address was missing its suite number where the postman testified that the mail would have likely still reached the recipient even if the suite number was missing)[8]; *In re Driggers*, 204 B.R. 70, 72 (Bankr. N.D. Fla. 1996)

---

[8] Even though the *Estavan* court found the creditor had mailed notice of the debtor's bankruptcy filing via mailed letters, the court held that the notice itself was insufficient. *In re Estavan Capital LLC*, 2015 WL 902056, at *5. In *Estavan*, the mailed notice informed the creditor of the existence of the bankruptcy, but failed to notify the creditor how the creditor's actions were affected by the bankruptcy filing or the automatic stay. *Id.* ("If [d]ebtor intended the automatic stay to apply to the [p]roperty, it should have said so in the email message to [creditor] in order to give sufficient notice of the effect of the bankruptcy filing to [creditor] . . . . the same problem which applies to [d]ebtor's attempted notice by email applies to its attempted notice by mail—there is nothing in [d]ebtor's initial filings that indicates creditor actions . . . would have been affected by [d]ebtor's bankruptcy filing or the automatic stay on such action arising upon the filing."). This case is distinguishable: as discussed below, the letters sent by the Trustee and his counsel clearly informed the Defendant about the automatic stay, the property subject to the automatic stay, and how his actions were affected by the bankruptcy filing. Ex. 101.

MEMORANDUM OF DECISION – 11

(finding that a creditor had willfully violated the automatic stay where debtor's counsel had sent a letter via regular mail notifying them to stop collection actions).

In this case, on March 11, 2019, and April 23, 2019, the Trustee sent the Defendant letters advising him of the bankruptcy proceeding and requesting that he surrender the Trailer. Ex. 108, at ¶ 8. The Plaintiff's counsel sent an additional letter to the Defendant on October 1, 2019 that advised him of the pending bankruptcy proceeding and requested that he surrender the Trailer. *Id.* at ¶ 9.[9] The parties stipulated that these letters were sent. *Id.* at ¶¶ 8 and 9.

Upon consideration of the facts presented, this Court finds that the Defendant had knowledge of the Debtor's bankruptcy filing and the automatic stay. The initial bill of sale, which put the Trailer in both the Debtor's and the Defendant's names, listing a sale date of August 26, 2018, indicates the Defendant's address is "8772 E. 129 N, Idaho Falls, ID 83401." Ex. 106. The ITD records for the initial title application putting the title in both the Debtor's and the Defendant's names indicate an address of "8772 E 129 N, Idaho Falls, ID 83401." Ex. 100. The ITD records indicate a "Receipt Number" of "18DH006916" for that change of title. *Id.* The application for certificate of title, listing both the Debtor and the Defendant as alternate owners, recorded August 28, 2018, lists an address of "8772 E 129 N, Idaho Falls, ID 83401." *Id.* The "Assignment of Title by Registered Owner," executed July 30, 2018, makes clear that the Defendant's address is

---

[9] Presumably, these letters were not sent via certified mail. *See* Ex. 108.

MEMORANDUM OF DECISION − 12

8772 E. 129 N, Idaho Falls, ID 83401. *Id.* A check made out from the Defendant to Bonneville County, with "18DH006916" in the memo line, dated August 28, 2018, shows the Defendant's address as "8772 E 129 N, Idaho Falls, ID 83401." Ex. 107.[10] The amended title, removing Debtor as an alternate owner leaving Defendant as the sole owner, printed October 11, 2019, lists an address of "8772 E 129 N, Idaho Falls, ID 83401." Ex. 103.

Moreover, the Trustee's letters to the Defendant, dated March 11, 2019 and April 23, 2019, respectively, indicate that the letters were sent to "8772 E 129 N, Idaho Falls, ID 83401." Ex. 101. Both letters describe the property at issue, the Trailer, and inform the Defendant that the Trailer is part of the bankruptcy estate pursuant to § 541(a)(1). The letter sent by Plaintiff's counsel, dated October 1, 2019, was also mailed to "8772 E 129 N, Idaho Falls, ID 83401," and contains similar information. *Id.*

Therefore, as of October 1, 2019, at least three notices were sent to the Defendant's address. On October 11, 2019, the Defendant filed an application with the ITD to have the Trailer titled solely in his name. *Id.* at ¶ 11.[11] Later that same day, and in response to the October 1, 2019 letter, Defendant called Plaintiff's counsel to discuss the contents of the most recent letter. The parties stipulated that Defendant does not believe he had actual or constructive knowledge of the bankruptcy at the time he filed the

---

[10] There is a street address on the check that is crossed out and "8772 E 129 N" is written in its place.

[11] The ITD subsequently issued a new certificate of title listing the Defendant as the sole owner. Ex. 108, at ¶ 12.

MEMORANDUM OF DECISION − 13

October 2019 application with the ITD, but completed the application because ITD instructed him to do so one year after the 2018 Trailer purchase. *Id.* at ¶ 13.[12]

Based upon these facts, this Court finds that the Plaintiff has satisfied his burden, and the Defendant had knowledge of the bankruptcy proceeding. As discussed above, sending letters via regular mail can impart knowledge of the automatic stay. *See In re Estavan Capital LLC*, No. 2:14-BK-17882-RK, 2015 WL 902056; *In re Driggers*, 204 B.R. at 72. All three letters were addressed to Defendant at his correct address. None were apparently returned. Moreover, Defendant received other important documents in the mail at that address, including the various Trailer titles from the ITD. In addition, Defendant called Plaintiff's counsel "in response" to the last of three letters he received concerning the bankruptcy and its implications for the Trailer. The Court finds it highly unlikely that the three letters sent to the Defendant's address would all go astray; indeed, Defendant admitted he called Trustee's counsel "in response" to the third letter. Accordingly, the Court finds that the Defendant had knowledge of the bankruptcy filing, and thus of the automatic stay.

"Once a creditor receives notice of the bankruptcy, 'any actions intentionally taken thereafter are "willful" within the contemplation of [§ 362(k)].'" *In re Gorringe*, 348 B.R. 789, 793 (Bankr. D. Idaho 2006) (quoting *In re Andrus*, 04.3 I.B.C.R. 137, 141

---

[12] It is unclear why ITD instructed the Defendant to complete the retitling paperwork one year after the 2018 Trailer purchase.

MEMORANDUM OF DECISION − 14

(Bankr. D. Idaho 2004) (citing *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002))). "No specific intent to violate the stay is required." *Id.* (citing *In re Andrus*, 04.3 I.B.C.R. at 147). "The question is thus whether the actor intended the action, not whether the actor intended to violate the stay." *Id.* (citing *In re Risner*, 04.1 I.B.C.R. 172, 173 (Bankr. D. Idaho 2004) (quoting *Eskanos & Adler*, 309 F.3d at 1214–15))). Here, during the pendency of the bankruptcy, and with knowledge of the automatic stay, the Defendant retitled the Trailer into his name only. The Court finds the Defendant's actions were intentional and therefore willful. *See In re Urwin*, 2010 WL 457737, at *3.

"Once a court determines that a willful violation of the automatic stay has occurred, an award of actual damages is mandatory." *In re Urwin*, 2010 WL 457737, at *4. "However, the amount of actual damages must be proven." *Id.* The burden rests with Plaintiff to prove his actual damages, "and the Court can not speculate as to the amount of costs and fees incurred." *Id.* (citing *In re Risner*, 04.4 I.B.C.R. at 174–75) ("The actual time spent must be established, through competent evidence in each case and viz each creditor alleged to have violated § 362(a), and that time and the fees charged must be shown to be reasonable".). "Punitive damages may only be recovered in 'appropriate circumstances.'" *In re Gorringe*, 348 B.R. at 795 (quoting § 362(h) (1998),[13] amended by

---

[13] This Code section was later amended. The language quoted by this Court in *Gorringe* is now found in § 362(k)(1).

MEMORANDUM OF DECISION − 15

§ 362(k)(1) (2010)). "Such circumstances exist when there has been a reckless or callous disregard for the law or rights of others." *Id.* at 794–95 (internal quotations omitted).

      Here, the parties stipulated to the exhibits, one of which was Plaintiff's costs and fees associated with recovery of the property. *See* Ex. 105. These fees began accruing on September 30, 2019, after the Trustee sent two letters to the Defendant's address. *Id.* The record reflects that Plaintiff's counsel spent approximately 20 hours addressing Defendant's stay violations at a rate of $195 per hour. The Court finds that Plaintiff incurred $3,946.60 in legal costs to address Defendant's stay violations, which the Court finds to be a reasonable amount of time and rate for the services provided in this case. Under the facts presented, the Court declines to impose punitive damages in this case. The Plaintiff did not request them in his amended complaint, Dkt. No. 15, nor does the Court find the Defendant's actions to be reckless or callous.

/////

MEMORANDUM OF DECISION − 16

*Conclusion*

The Court concludes that the Defendant willfully violated the automatic stay. Plaintiff incurred significant legal expenses as actual damages to remedy the stay violation. The Defendant's action transferring the Trailer solely to himself is void and Defendant must surrender the Trailer or its value to the Plaintiff. Furthermore, Plaintiff is entitled to actual damages in the amount of $3946.60 to remedy Defendant's stay violations. A separate order will be entered.

DATED: September 4, 2020

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE